**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Alejandra Lucero, | No. CV-22-00598-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Lydia Alejandra Lucero's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 10), Defendant Social Security Administration Commissioner's Response Brief (Doc. 11), and Plaintiff's Reply Brief (Doc. 12). The Court has reviewed the briefs, Administrative Record (Doc. 9, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 206-222) and affirms the ALJ's decision for the reasons addressed herein.

I.    **BACKGROUND**

Plaintiff filed an application for DIB in October 2017, for a period of disability beginning on August 23, 2016. (R. at 206). Plaintiff's claims were denied initially on January 22, 2018 (R. at 233-34), and upon reconsideration on June 11, 2018 (R. at 238-39). Plaintiff testified before an ALJ in a hearing regarding her claims on January 31, 2020.

(R. at 42-81). The ALJ denied her claims on April 1, 2020. (R. at 174-95). However, Plaintiff requested review of the ALJ's decision and the Appeals Council remanded Plaintiff's case for further proceedings on September 16, 2020. (R. at 196-202). An additional hearing was held via telephone on February 22, 2021. (R. at 10-41). The ALJ again denied her claims on April 21, 2021. (R. at 206-22). On February 11, 2022, the Appeals Council denied her request for review of the ALJ's decision. (R. at 1-5). On April 12, 2022, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of lumbar degenerative disc disease and spondylosis, fibromyalgia, complex regional pain syndrome, migraine headaches, exogenous obesity, history of schizoaffective disorder, posttraumatic stress disorder (PTSD), borderline personality disorder, and anxiety disorder. (R. at 209).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 222). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 210). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b)" with certain function limitations and concluded that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. at 212, 222).

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## III.   ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) whether the ALJ

failed to provide specific, clear, and convincing reasons to reject Plaintiff's symptom testimony, and (2) did the ALJ properly evaluate Plaintiff's alleged headache impairment in accordance with Social Security review. (Doc. 10 at 1). Plaintiff also requests this Court to remand the case for an award of benefits. (Doc. 10 at 24-25).

### A. Plaintiff's headache impairment did not meet or equal a listed impairment under Social Security regulations.

In September 2020, the Appeals Council vacated the ALJ's 2020 decision and remanded Plaintiff's claim directing the ALJ to evaluate Plaintiff's headache impairment in accordance with Social Security Ruling 19-4p and Listing 11.02. (R. at 198). Plaintiff asserts that the ALJ failed to follow the Appeals Council directive and neglected to address issues relating to the remand directive under Ruling 19-4p and Listing 11.02. (Doc. 10 at 14). This is a step three determination made by the ALJ and the burden of proof is on the Plaintiff. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The Court finds that the ALJ properly considered Plaintiff's headache impairment under the correct Social Security regulations and Listings according to the remand set forth by the Appeals Council. The ALJ found the Plaintiff did not meet her burden of proof to establish she met or equaled the criteria for her impairment in the Listings and the Court will not disturb that finding.

A Plaintiff may establish disability at step three of the evaluation process if she shows that her medical impairment meets or equals one of the impairments and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(iii). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citations omitted). SSR 19-4p provides guidance on how an ALJ evaluates a headache disorder claim under the Listings. It states they consider:

> A detailed description from an AMS of a typical headache event, including all associated phenomena (for example,

- 4 -

premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

2019 WL 4169635, at *7.

SSR 19-4p further provides that a headache disorder is not a listed impairment and Listing 11.02 (Epilepsy), particularly paragraph B or D, is the most closely analogous impairment for a headache disorder. *Id*. Listing 11.02 B or D requires the following:

11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

OR

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

1. Physical functioning (see 11.00G3a); or

2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

3. Interacting with others (see 11.00G3b(ii)); or

4. Concentrating, persisting, or maintaining pace (see

11.00G3b(iii)); or

5.  Adapting or managing oneself (see 11.00G3b(iv)).

In the present case, Plaintiff claimed that the ALJ did not satisfy the Appeals Council's directive to evaluate Plaintiff's headaches under 19-4p and Listing 11.02 and the ALJ failed to mention it in her decision. (Doc. 10 at 14). However, it's clear from the ALJ's decision that she did in fact evaluate Plaintiff's headache impairment according to the parameters set by the Appeals Council. As a preliminary matter, while the ALJ did not state the correct SSR regulation number in her decision, it is apparent that the correct analysis was undertaken and was simply a typographical error. The ALJ cited to SSR 19-2p at the start of the headache analysis, which is the regulation referring to obesity, instead of citing to SSR 19-4p. (R. at 215). The ALJ correctly refers to SSR 19-2p again later in her decision when she analyzes Plaintiff's obesity impairment. (R. at 216). This simple error in no way diminishes the ALJ's headache conclusions regarding the Plaintiff as it would not change the outcome of the ALJ's disability findings and is therefore harmless error. *See Molina*, 674 F.3d at 1115 (error is harmless when it is negligible to the nondisability determination).

The ALJ specifically discussed Plaintiff's headache impairment as set forth in SSR 19-4p. The ALJ discussed Plaintiff's symptoms to include the duration, intensity, frequency, treatment along with side effects and the limitations in functioning such as interference with daily activities. (R. at 213, 215). The ALJ noted that Plaintiff experienced migraines without aura but found her neurological examinations were generally normal with normal motor functioning, normal speech and normal sensation. (R. at 215, 599, 602, 1358, 1411, 1633, 1702, 1749, 1798). The ALJ further noted that Plaintiff's headaches did not seem as limiting as alleged given that she was traveling on a hunting trip, carried out internet searches on a computer for items on Craig's List, and was caring for her nephew and grandson, who was permanently placed with her for fifteen months and was "busy all day." (R. at 215-216, 614, 1809, 1852). The ALJ also cited that Plaintiff's headaches responded well to Botox treatments with no reported side effects and that this treatment

also helped with her narcolepsy. (R. at 215-216, 559, 598, 1641).

The ALJ furthered her analysis of Plaintiff's headaches by also evaluating her impairment according to Listing section 11.02 which is technically the analysis for epilepsy disorders, but SSR 19-4p directs that since there is no headache listing, this is the most analogous listing for consideration of headache impairments. Again, although the ALJ failed to distinctly list 11.02 in her decision, the Court finds the proper analysis was undertaken by the ALJ in her decision according to the parameters set forth by listing 11.02. The ALJ's omission to specifically type 11.02 is once again harmless error as the ALJ assessed Plaintiff's headache impairment in a procedurally appropriate way that adheres to Listing 11.02.

Listing 11.02 requires the ALJ to contemplate whether a headache impairment results in marked limitations in—physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *See* 2019 WL 4169635, at *7. When the ALJ assessed Plaintiff's mental impairments in the present case, she found that Plaintiff had a moderate limitation in interacting with others and only a mild limitation for the remainder of the categories listed above. (R. at 211). "It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

In reviewing the Appeals Council remand, it directed the ALJ to consider whether Plaintiff's headaches would cause difficulty with sustaining attention and concentration or lead Plaintiff to be off-task or absent from work. (R. at 198-99). The ALJ evaluated Plaintiff's ability in maintaining pace, concentrating, or persisting and found only a mild limitation. The ALJ found Plaintiff could still drive, prepare meals, manage funds, use the Internet, handle her own medical care, and attend church. (R. at 211). Additionally, the ALJ cited to Plaintiff's ability to go hunting, search Craig's List and care for young children. (R. at 211). With regards to the assessment of whether Plaintiff would be off-task or absent from work, Plaintiff's counsel specifically stated at the end of the hearing that

the ALJ adequately addressed that portion of the Appeals Council's remand. "[W]here it talks about the prior decision failing to adequately explain whether the prior ALJ considered whether the migraine headaches would cause the claimant to be off task or absent from work. And I think that's been addressed through those hypotheticals, Judge." (R. at 40). It is up to the ALJ to weigh the evidence and determine the findings and the ALJ did not find the requisite evidence to support Plaintiff's assertions that her headache limitation equaled an impairment under Listing 11.02 or SSR 19-4p.

### B. The ALJ provided specific, clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to reject the Plaintiff's symptom testimony and the Court should, therefore, remand for an award of benefits. (Doc. 10).

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec.*

*Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's impairments encompassing lumbar degenerative disc disease and spondylosis, fibromyalgia, complex regional pain syndrome, migraine headaches, exogenous obesity, history of schizoaffective disorder, posttraumatic stress disorder (PTSD), borderline personality disorder, and anxiety disorder. (R. at 209). Plaintiff asserted at her February 2021 hearing that she experienced migraines every two days that last anywhere from eight hours to three days with an average migraine lasting two days. (R. at 30-31). Plaintiff testified that in the past, Botox injections would help with migraines, and she would experience one or two episodes the first month after her injection, about one to two per week in the second month and every three days by the third month of post-injection. (R. at 28-30). However, Plaintiff stated that since her Covid diagnosis, the migraines are happening more frequently after receiving the Botox injections. (R. at 30-32). Plaintiff further testified that she uses a cane, can only sit for ten minutes at a time, stand for five minutes, walk from the front door of her home to the mailbox and back and then must sit down afterwards, she can only lift about a gallon of milk, and does not partake in any household chores or meal preparation. (R. at 27-29). Plaintiff also testified that she leaves the house once a week if she's "lucky," but also stated that she drives once or twice a week. (R. at 18, 29).

The ALJ considered the level of Plaintiff's medical issues and found that her

"impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms were not consistent with the medical evidence…" (R. at 213). The ALJ then cited to specific examples in the record to support her findings. Plaintiff generally argues that the ALJ failed to identify specific testimony and evidence that contradicted the Plaintiff's testimony. (Doc. 16 at 13-15). The Court is not persuaded by Plaintiff's arguments. It is apparent from the record as a whole that the ALJ used a multitude of specific reasons which are supported by the evidence to discount the Plaintiff's symptom testimony. The ALJ acknowledged in her decision that Plaintiff was afflicted with multiple impairments, but found they were not as disabling as alleged. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680.

Plaintiff also argued that the ALJ relied on a non-existent requirement and rejected Plaintiff's symptom testimony based on the severity of the symptoms. (Doc. 10 at 17). Plaintiff's argument is misplaced. The ALJ did not use a heightened standard in evaluating the symptom testimony and did not require proof of the severity of Plaintiff's symptoms; however, the ALJ is also not required to believe every allegation of pain made by the Plaintiff. "The Court does not read the ALJ's 'not entirely consistent' statement [ ] as requiring Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence." *McPherson v. Comm'r of Soc. Sec. Admin*., No. CV-20-08202-PCT-JAT, 2021 WL 3709845, at *7 (D. Ariz. Aug. 20, 2021). Nevertheless, the ALJ did agree that Plaintiff's impairments were limiting in nature, and he used those impairments to assess an RFC that was appropriate for the Plaintiff's functional limitations. "[A]n ALJ's assessment of a claimant adequately captures restrictions…where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Plaintiff's brief focuses only on her back pain and migraine impairments and the

Court will consider that medical evidence in its analysis of the ALJ's decision. With regards to Plaintiff's back issues, the ALJ noted that an August 2018 MRI showed some lumbar spine abnormalities. (R. at 214, 1628-29). However, the ALJ also discussed examinations that indicated normal range of motion, normal alignment, normal strength, and a non-tender back with no swelling. (R. at 214, 1633, 1637, 1642, 1647, 1702, 1798). Plaintiff was also observed to have normal gait during examinations. (R. at 563, 763, 768, 773, 790, 795, 808, 1608, 1620, 1784). The ALJ cited an EMG nerve conduction study in October 2018 was normal. (R. at 214, 1625). The ALJ did acknowledge that Plaintiff experienced decreased range of motion, sensation, and strength in her extremities at times, but treatment was generally stable. (R. at 214, 1387, 1638, 1652, 1665). In short, the ALJ cited to numerous medical records supporting her contention that Plaintiff's condition may not have been as limiting as alleged.

Plaintiff argues that she was "faulted" by the ALJ for using a cane that was not prescribed. (Doc. 10 at 20-21). This argument fails to show how the ALJ used this sentence in her decision as a basis for her "wholesale rejection of [Plaintiff's] symptom testimony" as suggested by Plaintiff. (Doc. 10 at 20). When taken in the correct context, the ALJ's notation about Plaintiff's use of a cane as an ambulatory aid was drafted in a way that suggests medical examinations describing Plaintiff's gait as normal challenges Plaintiff's use of a cane. (R. at 214). Especially when Plaintiff's own physician opined that a cane was not medically necessary (R. at 1787).

Plaintiff further argues that the ALJ rejected symptom testimony based on the belief that Plaintiff's lumbar pain was stable with treatment and the ALJ usurped the role of the doctors when interpreting the medical evidence. (Doc. 10 at 21-22). Plaintiff's argument is without merit. It's clear from the record that the ALJ did not rely on her own personal beliefs to interpret the medical records. The ALJ relied on an examination notation from Plaintiff's primary care provider which indicated that Plaintiff's lumbosacral spondylosis and radiculopathy was currently stable. (R. at 214, 1638). The ALJ also accounted for Plaintiff's remaining symptoms by finding that Plaintiff's limitations could be accommodated with a light RFC along with other environmental and postural restrictions.

In evaluating Plaintiff's symptom testimony, the ALJ also considered the conservative course of treatment as a factor in the non-disability determination. This was also a proper consideration by the ALJ. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (indicating that if a claimant has only received conservative treatment, this is a proper reason for the ALJ to discount his symptom testimony). Plaintiff contends that the injections and nerve blocks she underwent do not qualify as conservative medical treatment. (Doc. 10 at 23). However, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff displayed positive responses to Botox treatments for her migraines, medication helped relieve her pain and functional abilities with daily activities, and lumbar injections provided a reprieve from pain for three months. (R. at 559, 610, 1641, 2121, 2148). Based upon the medical evidence, Plaintiff exhibited improvement with her prescribed treatment plans.

In consideration of Plaintiff's daily living activities, the ALJ acknowledged in her decision that Plaintiff's daily activity level was not consistent with her alleged limitations. (R. at 216). The ALJ cited to an elk hunting trip in which Plaintiff attended, a report that she may be driving a friend to Las Vegas and planning Spring Break activities with her children, she described being busy taking care of her three-year-old grandson and nephew who was permanently placed with her for fifteen months and attending her son's first football game. (R. at 67, 614, 1118, 1809, 1852). The ALJ also notated that serving as a foster parent presumably carries with it a determination by child protective services that an individual has the ability to care for a child. (R. at 215, 216). The ALJ also found that Plaintiff could drive, maintain her personal finances, occasionally cook and fold laundry, was capable of shopping and was independent in her self-care needs. (R. at 218, 1411). Plaintiff contends that the ALJ did not demonstrate that a substantial part of her day was spent in these activities and failed to show how the activities contradicted her symptoms. (Doc. 10 at 23-24). The Court is not persuaded by Plaintiff's arguments. "Even where those

[daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. The ALJ specifically noted that Plaintiff took care of her nephew all day and her grandson was permanently placed with her for fifteen months and that caring for young children can be demanding both physically and emotionally. (R. at 215, 1808-09, 1852). The ALJ also acknowledged that Plaintiff claimed exposure to lights exacerbated her headaches, but she was able to search online for items on Craig's List or take road trips all of which required exposure to light. (R. at 215, 216, 612, 614, 1118). Thus, the ALJ's finding that Plaintiff was not as limited as she alleged was reasonable.

Although Plaintiff's main argument would like the Court to find that the ALJ failed to identify specific evidence that contradicted her testimony, the Court does not agree. The ALJ used specific, clear, and convincing reasoning throughout the discussion of her decision to support a non-disability finding. Additionally, if an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security).

Plaintiff's arguments only seek to offer alternative interpretations of the evidence, which the Court does not support. *See Burch*, 400 F.3d at 679. Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, the Plaintiff's conservative treatments for her impairments, and Plaintiff's daily activities to discount Plaintiff's symptom testimony. There is sufficient evidence present to enable this Court to reasonably discern the ALJ's path to conclude that her decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*,

278 F.3d at 954. Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear, and convincing reasons to dismiss Plaintiff's claims and those reasons were supported by substantial evidence.

**IV.    CONCLUSION**

The Court finds that substantial evidence supports the Commissioner's nondisability determination. The ALJ's decision regarding Plaintiff's headache impairment was appropriately determined. Moreover, the ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence, and properly considered the medical opinion evidence of record. Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 9th day of May, 2023.

Honorable Susan M. Brnovich
United States District Judge

- 14 -